**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**James W. THOMAS, Defendant-**
**Appellant.**

**No. 14735.**

United States Court of Appeals
Seventh Circuit.

April 20, 1965.

Rehearing Denied May 18, 1965.

**432**

Frank Oliver, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Charles H. Turner, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before KNOCH, CASTLE, and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The jury found James W. Thomas, defendant-appellant, guilty of violating Title 26 U.S.Code, § 4705(a) by selling a quantity of cocaine not pursuant to a written order or official form. He was sentenced to serve seven years' imprisonment.

The defendant contends that he was deprived of a fair trial because the prosecutor improperly insinuated in his cross-examination of defendant and in his closing argument to the jury that defendant had been engaged in the narcotic trade for a long time, although, defendant asserts, there was no evidence to that effect.

Federal Narcotic Agent William Turnbou testified that defendant had sold him a quantity of cocaine (as charged in the indictment) in the presence of informant Charles Gaston on October 22, 1963. Defendant admitted making a sale on that day, but to Gaston, and denied having ever seen Agent Turnbou prior to January 13, 1964, the date of his arrest.

It was stipulated that the white powder involved in the transactions with which the testimony dealt did contain cocaine hydrochloride.

■ Defendant's credibility became an important issue in the trial. The Trial Court had broad discretionary powers to allow cross-examination directed to matters affecting defendant's credibility as a witness. Arnold v. United States, 7 Cir., 1925, 7 F.2d 867, 869; Lyda v. United States, 9 Cir., 1963, 321 F.2d 788, 793.

■ The Trial Judge limited the scope of cross-examination and sustained most of the defendant's objections. We do not agree that he erred in denying motions for mistrial. In the total context of the trial, the questions concerning possible previous supplies of cocaine, procedures for dilution of narcotics, and methods of sale to customers, to all of which objection was sustained, did not vitiate the entire proceeding, as defendant argues. Myres v. United States, 8 Cir., 1949, 174 F.2d 329, 338, cert. den. 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520; Chavez v. United States, 10 Cir., 1958, 258 F.2d 816, 818, cert. den. sub nom. Tenorio v. United States, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed. 2d 577 (1959).

In his closing argument, the prosecutor drew certain inferences from the evidence (which the defendant feels were unwarranted) and invited the jury to draw the same conclusions.

Agent Turnbou testified that defendant's apartment alone of the apartments in the building had iron padlocked gates at front and back doors, that defendant reproached Mr. Gaston for bringing Agent Turnbou without prior arrangements. He testified further that defendant produced a foil package from which he sifted out ten quantities of white powder which he wrapped in separate foil packages. Several times when there was a knock at the door Agent Turnbou and Mr. Gaston were sent into another room to wait and, on their return, they observed that the number of small foil packets of powder had diminished. Defendant himself used some of the cocaine and invited Agent Turnbou to join him. Defendant showed a familiarity with narcotics parlance and exercised care in handling the money Agent Turnbou paid him, picking it up with a tissue paper.

When Agent Turnbou returned on January 13, 1964, he testified, the defendant refused to sell him any cocaine referring to the risk he had taken in selling any to him on the prior occasion because Agent Turnbou might be an F.B.I. man.

When Agent Turnbou told defendant he was under arrest, the defendant slammed the inner wooden door and re-opened it to submit to arrest several minutes later. The following search of the apartment disclosed that the toilet had recently been flushed. Narcotic diluents were found in the pantry.

On arrest defendant was told that "we had a sale of cocaine against him" and replied "yes, I know." In his own testimony defendant admitted a 1954 conviction of selling marijuana.

The prosecutor could reasonably infer from this evidence that defendant was an experienced trader in narcotics and it constituted only a slight hyperbole which must have been evident to the jury when the prosecutor said that "he sold narcotics to anybody and everybody who came to his premises." It was reasonable for the prosecutor to suggest that the unusual iron gates were installed for the protection of defendant's narcotics trade and that the supply of white powder on hand from which the defendant strained out the ten small packets was contraindicative of a novice in the trade. It was equally reasonable to infer that defendant had disposed of his supply of the narcotic in the few moments he had kept Agent Turnbou waiting at the barred door on January 13, 1964.

Aside from the fact that many of these statements on which defendant now bases a claim of error provoked no objection at the time, we find no error in these or the other generally similar comments made. United States v. Freeman, 7 Cir., 1948, 167 F.2d 786, 791, cert. den. 335 U.S. 817, 69 S.Ct. 37, 93 L.Ed. 372; United States v. Goodman, 7 Cir., 1940, 110 F.2d 390, 394–395.

We believe that the defendant had a fair trial. The judgment of the District Court is affirmed.

Affirmed.